**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GB LICENSE, LLC, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-519 |
| | **JURY TRIAL DEMANDED** |
| BAR PROPERTIES, L.P., | |
| Defendant. | |

## COMPLAINT

Plaintiff GB License, LLC ("GB License") brings this action for declaratory and injunctive relief against Defendant BAR Properties, L.P. ("BAR Properties") and alleges as follows:

### THE PARTIES

1.      GB License is a single-member limited liability company organized under the laws of the State of Delaware, with its principal place of business in Philadelphia, PA.

2.      BAR Properties is a limited partnership organized under the laws of New York with its principal place of business in Great Neck, New York.

3.      BAR Properties is the owner of 5,500 square foot warehouse building with an address of 165 Woodfield Road, West Hempstead, NY (the "Premises").

### JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a).

5.      Complete diversity exists between the parties.

6.      GB License is a citizen of Delaware and Pennsylvania because its sole member, GoBrands Inc. d/b/a Gopuff ("Gopuff") is a corporation incorporated under the laws of the State of Delaware with its principal place of business in Philadelphia, Pennsylvania.

7.      BAR Properties is a citizen of New York because, on information and belief, all of BAR Properties' partners are citizens of New York.

8.      The amount in controversy in this case exceeds $75,000 because, unless this Court releases GB License from its commercial lease agreement for the Premises, GB License will be required to pay far more than $75,000 in rent over the term of the lease.

9.      This Court has personal jurisdiction over BAR Properties because it is organized under the laws of the State of New York and has its principal place of business at 45 North Station Plaza, Suite 315, Great Neck, New York 11021.

10.     Venue is appropriate in this Court under 28 U.S.C. § 1391(b) because BAR Properties resides in this judicial district, the Premises are in this judicial district, and, as alleged in more detail below, a substantial part of the events giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

11.     On or about April 27, 2021, BAR Properties entered into a commercial lease agreement (the "Lease") with GoBrands, Inc. d/b/a Gopuff ("Gopuff") for the Premises, a copy of which is being submitted under seal as Exhibit A.

12.     On or about June 14, 2021, Gopuff assigned the Lease to GB License, a Gopuff affiliate.

13.     This transfer was permitted by the Lease.

14.     On or about August 4, 2022, GB License and BAR Properties entered into a First Amendment to the Lease, a copy of which is being submitted under seal as Exhibit B.

15.     Under the First Amendment to the Lease, the initial lease term began on March 17, 2022, and is set to expire on June 30, 2029.

16.     Under the terms of the Lease and the First Amendment to the Lease, the Rent Commencement Date of the Lease was June 14, 2022.

17.     Neither GB License nor Gopuff ever occupied the Premises.

18.     Around the same time, Gopuff, on behalf of GB License, engaged the services of Therese Marshall, a broker with Jones Lang LaSalle, Inc. ("JLL"), to negotiate with BAR Properties for a buyout of the Lease.

19.     Gopuff (on behalf of GB License) and BAR Properties could not reach an agreement.

20.     Therefore, Gopuff (on behalf of GB License) began looking for another commercial entity with which to enter a sublease for the Premises.

21.     The Lease contains a provision that allows the tenant to sublease part or all of the Premises to another commercial entity subject to BAR Properties' approval, which shall not be unreasonably withheld.

22.     Around the same time, BAR Properties began showing the Premises to prospective subtenants.

23.     Gopuff (on behalf of GB License) also began searching for a subtenant for the Premises.

24.     On or about October 26, 2023, Gopuff sent BAR Properties a Letter of Intent, a copy of which is being submitted under seal as Exhibit C, informing BAR Properties that Gopuff (on behalf of GB License) proposed to enter into a sublease with Joan of Mark LTD.

25.     The Letter of Intent and accompanying term sheet inadvertently called the proposed subtenant Joan of Mark LTD, which was a defunct name for the business. The correct name for the business is Joan of Mark Distributors, LTD ("Joan of Mark").

26.     In the email to BAR Properties, Gopuff explained that the Letter of Intent was meant to start the process for BAR Properties' review and approval and that a sublease would follow.

27.     In the same email, Gopuff informed BAR Properties that Joan of Mark has been in business for 35 years and is in a similar business to that of Gopuff and GB License.

28.     Gopuff also sent financial records for Joan of Mark.

29.     BAR Properties, through its representative Jeffrey W. Reiss, responded that Joan of Mark had already been reviewed and rejected. BAR Properties did not provide any explanation for why Joan of Mark had been rejected.

30.     Gopuff responded to Mr. Reiss and requested more information about why Joan of Mark had been rejected.

31.     Gopuff also tried to alleviate any potential concerns by making clear that, even if a subtenant agreement was approved, Gopuff would remain liable to BAR Properties for any unpaid rent.

32.     Apparently invoking Section 18.01(b)(iv), Mr. Reiss informed Gopuff that BAR Properties was rejecting Joan of Mark as a proposed subtenant because BAR Properties had negotiated with Joan of Mark to become a tenant of the building in which the Premises are located.

33.     On October 30, 2023, Gopuff (on behalf of GB License) again contacted Mr. Reiss to inquire about BAR Properties' reasons for rejecting Joan of Mark. Gopuff also

explained that Section 18.01(b)(iv) did not apply because there are no current vacancies in the building in which the Premises are located, meaning there was no competition between BAR Properties and GB License for a lease with Joan of Mark.

34.     In response, Mr. Reiss stated that BAR Properties' position remained unchanged.

35.     In the same response and only after already rejecting Joan of Mark as a subtenant, Mr. Reiss then identified additional purported problems with Gopuff's request to enter into a sublease agreement. These additional purported problems included Gopuff's omission of a proposed sublease with the Letter of Intent and concerns about whether Joan of Mark was an ongoing business.

36.     On information and belief, these additional problems were not BAR Properties' original rationale for rejecting Gopuff's Letter of Intent.

37.     Gopuff explained that it provided the Letter of Intent in order to start the process of obtaining BAR Properties' approval so that, if BAR Properties rejected Joan of Mark, neither Gopuff nor Joan of Mark would have wasted the resources of negotiating a sublease.

38.     At the same time, Gopuff expressed its continued desire to find a subtenant and, to that end, requested a list of all the entities with which BAR Properties had negotiated in the past six months for a lease in the building where the Premises are located.

39.     Mr. Reiss did not provide Gopuff with such a list.

40.     Instead, Mr. Reiss merely stated that it would continue looking for a new tenant to take over GB License's lease.

41.     Gopuff responded by again expressing that it would be helpful to have a list of potential tenants with whom BAR Properties had been in contact and that, according to BAR Properties, could therefore not be GB License's subtenant. In the same communication, Gopuff

informed Mr. Reiss that Gopuff had engaged the services of Newmark to market the space and find GB License a subtenant.

42.     Approximately one week later, Gopuff (on behalf of GB License) again requested additional information from BAR Properties about why it was refusing to allow GB License to sublet the Premises to Joan of Mark. In particular, Gopuff reiterated that Gopuff would remain liable for any unpaid rent, which should alleviate any concerns BAR Properties had about the financial condition of any subtenant, including Joan of Mark.

43.     In response, Mr. Reiss only stated that BAR Properties' position remained unchanged.

44.     Gopuff and BAR Properties held a conference call to discuss BAR Properties' continued objections.

45.     During that phone call, BAR Properties, through Mr. Reiss, expressed that it would only consent to a subtenant agreement:

    a.  if Gopuff provided updated financial information to BAR Properties;

    b.  if Gopuff provided additional financial information and rent history for Joan of Mark;

    c.  if Gopuff verified that Joan of Mark was still a business in good standing;

    d.  if Joan of Mark entered into a "good guy guaranty" agreement with BAR Properties in which Joan of Mark would agree to provide notice if it intended to break the sublease agreement and would agree to pay all past-due rent before vacating the premises;

    e.  if Gopuff provided BAR Properties with a security deposit equal to six months of rent; and

     f.   if Gopuff agreed to pay the broker fee BAR Properties owed to Schacker Realty for its efforts in attempting to find a new tenant for the Premises.

46.    Gopuff provided BAR Properties with its updated financial information.

47.    Gopuff also provided BAR Properties with a letter of recommendation for Joan of Mark.

48.    Gopuff also explained the problem with Joan of Mark's former name and provided information from the New York Department of State showing that Joan of Mark was an ongoing business with an active business registration.

49.    Gopuff also asked for additional clarification about the "good guy guaranty," including asking if BAR Properties wants the agreement to be between it and Joan of Mark. Gopuff agreed to include a guaranty in the sublease agreement between GB License and Joan of Mark but questioned how a guaranty between BAR Properties and Joan of Mark would work, given the lack of any other direct contractual relationship between the parties.

50.    Gopuff did not agree to provide six months' rent as a security deposit or have BAR Properties hold the six months' rent security deposit that Joan of Mark had agreed to provide GB License. Nevertheless, Gopuff expressed a willingness to discuss the issue if BAR Properties could provide clarification for how it would handle Joan of Mark's security deposit in the event it defaulted on rent payments.

51.    Despite Gopuff providing the requested financial records for Gopuff, a reference letter for Joan of Mark, and information showing that Joan of Mark was an ongoing business, and otherwise asking for clarification, Mr. Reiss refused to engage productively with Gopuff.

52.     After further requests for clarification from Gopuff, Mr. Reiss reiterated BAR Properties' list of demands. Mr. Reiss also added that BAR Properties would require GB License to remove the "For Rent" sign that Newmark had erected on the property.

53.     Mr. Reiss, on behalf of BAR Properties, did not respond to the substantive information Gopuff provided, nor did he answer the questions Gopuff raised.

54.     After further prompting, Mr. Reiss stated that BAR Properties' "position remains unchanged that tenant's proposed subtenant is deemed unsatisfactory." Mr. Reiss also stated that all his conditions must be met before BAR Properties would consent to a sublease agreement.

## COUNT 1:
## BREACH OF CONTRACT

55.     GB License incorporates by reference the preceding paragraphs of this Complaint as if fully restated in this paragraph.

56.     The Lease between BAR Properties and Gopuff, as assigned to GB License, expressly stated that "[i]f Tenant is not in default at the time of requesting Landlord's consent, then Landlord's consent to an assignment of this Lease or subletting of the Premises shall not be unreasonably withheld or delayed . . . ." *See* Lease, § 18.01(b).

57.     Gopuff, on behalf of GB License, requested consent from BAR Properties to enter into a sublease agreement with Joan of Mark and, in an effort to start the process, asked whether BAR Properties would accept Joan of Mark as a subtenant.

58.     Gopuff also explained that, if Joan of Mark were acceptable to BAR Properties, Gopuff would provide additional information to BAR Properties, including the proposed sublease agreement between GB License and Joan of Mark.

59.     At the time Gopuff made the request on behalf of GB License, GB License was not in default of the Lease.

60.     BAR Properties unreasonably rejected Joan of Mark as a subtenant.

61.     BAR Properties' rejection was unreasonable because it was based on BAR Properties' invocation of a section of the Lease that did not apply.

62.     Specifically, BAR Properties contended that GB License could not sublet the Premises to Joan of Mark because BAR Properties had been negotiating with Joan of Mark within the last six months for a lease in the same building. *See* Lease § 18.01(b)(iv).

63.     That provision is meant to ensure that BAR Properties does not lose the opportunity to lease other portions of the building.

64.     However, BAR Properties was negotiating with Joan of Mark to take over the Lease from GB License for the same Premises.

65.     BAR Properties was not in competition with GB License for rent from Joan of Mark.

66.     Therefore, the section invoked by BAR Properties was inapplicable.

67.     Because BAR Properties' basis for withholding its consent was legally erroneous, BAR Properties breached the Lease by unreasonably withholding its consent for GB License to sublease the Premises.

68.     As a result of BAR Properties' breach, GB License is required to pay rent through the end of the Lease term in 2029, rather than having some or all of that rent offset by a subtenant.

## COUNT 2:
## BREACH OF CONTRACT

69.     GB License incorporates by reference paragraphs 1-54 of this Complaint as if fully restated in this paragraph.

70.     The Lease between BAR Properties and Gopuff, as assigned to GB License, expressly stated that "[i]f Tenant is not in default at the time of requesting Landlord's consent, then Landlord's consent to an assignment of this Lease or subletting of the Premises shall not be unreasonably withheld or delayed . . . ." *See* Lease, § 18.01(b).

71.     BAR Properties unreasonably withheld its consent to GB License's proposal to sublease the Premises to Joan of Mark by conditioning consent on a series of demands including, without limitation:

    a.   Requiring six months' rent as a security deposit;

    b.   Demanding that Gopuff pay any fee BAR Properties owes to its broker; and

    c.   Requiring a "good guy guaranty" agreement between BAR Properties and Joan of Mark (even though the parties would not have a contractual relationship under the sublease agreement between GB License and Joan of Mark and even though GB License would remain liable for any unpaid rent).

72.     Under the terms of the Lease, BAR Properties has no legal right to condition a lease agreement on these or other requirements, other than those expressly stated in the Lease.

73.     By unreasonably withholding its consent, BAR Properties breached the Lease.

74.     As a result of BAR Properties' breach, GB License is required to pay rent through the end of the Lease term in 2029, rather than having some or all of that rent offset by a subtenant.

10

## COUNT 3:
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

75.     GB License incorporates by reference paragraphs 1-54 of this Complaint as if fully restated in this paragraph.

76.     Gopuff (on behalf of GB License) and BAR Properties spent weeks discussing whether BAR Properties would consent to a sublease agreement between GB License and Joan of Mark.

77.     Throughout those weeks, BAR Properties consistently refused to provide information to Gopuff that would facilitate a sublease with Joan of Mark or any other subtenant including, but not limited to:

    a.  Refusing to explain the basis for its rejection of Joan of Mark as a subtenant; and

    b.  Refusing to provide Gopuff with a list of entities that, in BAR Properties' view, were ineligible to be subtenants because BAR Properties had negotiated with them for a lease in the past six months.

78.     BAR Properties also continued advancing bad faith reasons for why Joan of Mark was not an acceptable subtenant, including questioning Joan of Mark's status as an ongoing business even after Gopuff provided information about Joan of Mark's registration with the New York Department of State and its financial records.

79.     BAR Properties also conditioned its consent on Gopuff's willingness to pay the money BAR Properties may owe to its broker, even though Gopuff did not agree to cover brokers' fees in the Lease or otherwise.

80.     On information and belief, BAR Properties refused to provide the requested information, continued to object to Joan of Mark as a tenant, and demanded additional payments from Gopuff in order to frustrate Gopuff's efforts to find a subtenant.

81.     On information and belief, BAR Properties did so because it wanted to enter into a new, more lucrative lease with any tenant that would otherwise be interested in subletting the Premises.

82.     Because BAR Properties failed to act in good faith and frustrated Gopuff's and GB License's efforts to find a subtenant, GB License is required to pay rent through the end of the Lease term in 2029, rather than having some or all of that rent offset by a subtenant.

WHEREFORE, GB License requests that the Court enter an order: (a) declaring that BAR Properties breached the Lease, (b) declaring that, because of BAR Properties' breach, the Lease is no longer enforceable against GB License, (c) enjoining BAR Properties from trying to collect rent from GB License or exercising any other remedies otherwise mentioned in the Lease, and such other relief as this Court deems equitable and just.

## JURY DEMAND

Plaintiff demands a trial by jury.


January 24, 2024                                    /s/ *Ryan F. Monahan*
                                                    Ryan F. Monahan (5731757)
                                                    Duane Morris LLP
                                                    30 South 17th Street
                                                    Philadelphia, PA 19103
                                                    215-979-1182
                                                    RFMonahan@duanemorris.com

                                                    *Counsel for Plaintiff*
                                                    *GB License, LLC*